## Isaac R. Bass v. N. M. Taylor et al.

1. CHANCERY: PLEADING: COMPLAINANT ENTITLED TO RELIEF, NOTWITHSTANDING AN IMMATERIAL VARIANCE BETWEEN THE BILL AND PROOF.—Where the plaintiff filed his bill for a settlement of the partnership accounts, and to recover certain sums paid out by him since the dissolution of the partnership, against two defendants, whom he alleged were his partners, and together were entitled to one-half of the partnership property, and liable for one-half of the debts; and it appeared by the answers of both defendants and the proof that one of the defendants was not a partner: it was *held*, that the complainant's bill ought not to be dismissed upon the ground that his pleadings did not correspond with the proof, but that he was entitled to a decree against the defendant, who was a partner, for such sum as the proof showed was due.

2. PARTNERSHIP: POWER OF PARTNER TO BIND THE FIRM, AFTER DISSOLUTION.— A partner, after the dissolution of the partnership, has a right to compromise a debt due by the firm, and he will be entitled to contribution from his associate for the sum so paid.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The appellant, Bass, filed his bill in the Superior Court of Chancery against the appellees, N. M. Taylor and H. P. Taylor.

The bill charged that in 1834 the complainant and the defendants entered into a copartnership in planting, by the terms of which, the complainant, who furnished one-half of the capital, was to be interested to the extent of one-half, and the two Taylors jointly to the remaining half.

That the partnership purchased a certain sixteenth section of land from the trustees of the township at the sum of $12,800, the deed to which was taken in the name of complainant and N. M. Taylor,

and they executed their joint note for the purchase-money. That in the year 1839, a verbal settlement of the partnership affairs was had between the parties, and the partnership property divided. That on this settlement 480 acres of the sixteenth section was allotted to the Taylors, and 160 acres to complainant. That after the division of the property, the defendants were found indebted to him in the sum of $1000.

That in 1846, the trustees of the township instituted suit against complainant and said N. M. Taylor, on the note for the purchase-money of the sixteenth section. That the complainant and said N. M. Taylor employed Messrs. Foote and Hutchinson, attorneys, to defend the same, at the sum of $500, of which sum complainant has paid $400, and the said N. M. Taylor $100.

That judgment was recovered on said note in favor of the trustees for about $20,000, and a *fieri facias* issued thereon, under which the said sixteenth section was sold, and purchased by the said trustees. The *fieri facias* was also levied on twenty-seven slaves belonging to complainant. That a compromise was then entered into by complainant and the trustees, with the advice and consent of the defendants, whereby the sixteenth section was surrendered, and the further sum of $5000 agreed to be paid to the trustees in full settlement of the judgment. That defendants not being present when the compromise was finally consummated, complainant executed his note for the $5000, the trustees agreeing to take the note of defendants for $2500, in part payment thereof.

The bill insisted that by this compromise the settlement made in 1839 was abrogated, and that the property then divided now belonged to the partnership. The bill also stated that the defendants afterwards refused to execute their note for $2500 to the trustees, and had also refused to pay any part of the sum of $5000, which had been assumed by complainant in pursuance of the compromise.

The prayer was for a settlement of the partnership accounts, embracing all the partnership transactions, and that the defendants be decreed to pay him the amount found due on said settlement; and that this sum be decreed to be a lien on the partnership property, which is asked to be sold to pay the sum, and for an execution for the balance; and for " such other or further relief as the nature of the case demands, and to equity shall seem meet."

The Taylors answered, and both denied that the partnership embraced H. P. Taylor.

N. M. Taylor denied that the compromise was entered into with his consent, or that it had the effect of annulling the settlement of 1839. He stated that, in a conversation he had with Bass, in 1847, he expressed his willingness to discharge their joint liability to the school trustees, provided said trustees would take the sixteenth section at a fair valuation, and that he, Taylor, should be credited on said claim with the valuation of the 480 acres, which had fallen to his share on the settlement of 1839; and that, in the compromise which was made, he was only allowed $3 50 per acre, instead of its true value, which was about $7 per acre.

It was conceded that the proof did not establish the partnership as to H. P. Taylor.

A letter of N. M. Taylor, dated 30th June, 1847, written to one of the trustees, expressed a willingness, on his part, to compromise the debt they had against him and Bass, by surrendering the sixteenth section, and some land situated on "the river," and paying $5000. The letter referred to a previous conversation with the trustee to whom it was written, in which the terms of the compromise seemed to have been talked over. The letter stated, the only obstacle to a settlement on these terms was *the inability* of the writer to pay or secure the $5000.

The proof also showed that complainant paid the $5000 to the trustees, in August, 1848, after his bill was filed.

The chancellor, on final hearing, dismissed the bill, at complainant's costs.

*H. A. H. Lawson,* for appellant,

Filed the following brief, on the point that the complainant was entitled to relief against N. M. Taylor, although the proof did not show that H. P. Taylor was a partner, as charged.

"Because the complainant may have mistaken the true state of his case, it is no reason that he should be deprived of a remedy to which he has shown himself entitled. It is a rule, which is well settled by high authority, and is certainly founded in justice, that, although a party may mistake the particular relief to which he is entitled, yet if he show a clear case for the interposition of a court

of equity, he will be relieved under the general prayer." 1 How. Miss. R. 463; 1 John. Ch. R. 117; 1 John R. 559.

When specific relief is prayed, or other or further relief, the prayer being in the disjunctive, other relief, differing from the specific relief, may be granted. *Pleasants* v. *Glasscock*, 1 S. & M. R. 17.

The reason of inserting the general prayer is, that if the party mistake the relief to which he is entitled, the court may afford that to which he has a right. And the more particularly will the court grant the relief, if the opposite party has not been taken by surprise, or prejudiced,—neither of which is pretended in the present case. N. M. Taylor admits the partnership as to himself, and all the facts, except that H. P. Taylor was a partner. Then he cannot be injured by a decree against himself, on facts admitted by him, and stated in the bill.

His answer shows that he is speaking of the partnership stated in the bill; that all his admissions relate to that partnership in farming; that H. P. Taylor resided on the plantation. He is no way taken by surprise, and cannot be injured in any way by being compelled to settle, under the general prayer for relief.

*A. Burwell*, for appellees.

This bill was filed to settle the accounts of a partnership, alleged to consist of Bass, N. M. Taylor, and H. P. Taylor.

The partners must be presumed to know who composed the firm. Both the defendants have sworn that H. P. Taylor was not a partner, and the weight of the testimony is in favor of that position.

In fact, counsel for appellant do not seriously insist on holding H. P. Taylor as a partner, and abandoned him in the court below. Assuming that the bill must be dismissed as to H. P. Taylor, it seems to me to follow that the whole must fail.

As to N. M. Taylor, the remedy is full, at law, if he owes a stated balance, or by bill, for contribution for what Bass paid as his security, or on account of a debt due by him and Bass jointly, if any such payment was made.

But the bill asks to settle the partnership accounts of one firm, composed of certain persons. Under a bill framed for that purpose, the complainant cannot settle the accounts of another firm. He

might have dismissed his bill, or amended it on the coming in of the account and proofs, and filed a bill against the proper party, to settle the accounts of the true firm. He has not done so. To grant him a decree against N. M. Taylor, would be a wide departure from the bill, which asks an account against H. P. and N. M. Taylor. This would be suing for one thing and getting a judgment for another, which is allowed neither at law nor in equity.

At the time the bill was filed, Bass had not paid the debt to the school commissioners. The bill could not be maintained for any purpose, and was properly dismissed on this ground. He might, after his payment, have filed his bill for contribution, or to set aside the settlement of accounts, which had been had, and perhaps might have amended the bill, and brought up the question of the liability of N. M. Taylor. This has not been done.

*F. Anderson*, on same side,

Upon a petition for a reargument, filed the following brief, as to the propriety of rendering a decree against N. M. Taylor, upon the pleadings and proof:—

1. By the testimony, the alleged partnership was fully disproved, and a partnership shown to have existed between Bass and N. M. or H. P. Taylor alone. By the testimony, also, it was fully disproved that either H. P. or N. M. Taylor agreed to give their note for $2500, and that that was to be entered as a credit on Bass's note for $5000. It was also fully disproved that H. P. Taylor had anything to do with the compromise, or even ratified, or consented to, or had any knowledge of it. I say nothing here on the point, whether N. M. Taylor assented to the compromise, as actually proved, or not. The compromise, as actually proved, was of a judgment obtained against Bass and N. M. Taylor for about $22,000, on a joint note signed by them, but which note Bass alleges to have been a partnership debt of the firm of Bass and both Taylors. In this compromise, Bass gave up 160 acres of land, shown by the proof to have been worth $4 per acre, and N. M. Taylor gave up 480 acres, shown to have been worth $7 per acre at the least.

On this state of facts and pleadings, the court holds N. M. Taylor liable to Bass for one-half of the Bass note, allowing him the

difference between the value of his 480 acres, and the Bass 160 acres, given up in the compromise.

In this, I respectfully insist, there is error, at least in the amount with which N. M. Taylor is charged, without reference, at present, to the question, whether N. M. Taylor is liable at all on this bill. For the present, assuming his liability under the allegations of the bill, the question is, to what extent is he liable? Certainly for only one-fourth. I do not controvert the correctness of the general proposition that, under the prayer for general relief, other than the relief specifically prayed, can be granted; but I insist that it is an incontrovertible proposition that the relief granted must not be inconsistent with the facts stated in the bill; and further, that there must be facts stated in the bill to which the relief granted may apply.

The authorities on this point (even those cited by counsel for appellant) are decisive.

In the case of *Wilkin* v. *Wilkin*, 1 John. Ch. Rep. 117, Chancellor Kent says: "Where the bill contains a prayer for general relief, and also for specific relief, the plaintiffs may have other specific relief, provided it is. consistent with the case made by the bill." *Grimes* v. *French*, 2 Atkyns, 141; *Dormer* v. *French*, 3 Atkyns, 142.

In the case cited in 1 How. Miss. Rep. 463, *Gildant's Heirs* v. *Starke*, Judge Sharkey says: "Because the complainant has mistaken the true state of his case, it is no reason that he should be deprived of a remedy to which he has shown himself entitled;" and, in that case, the relief granted could not, in fact, be considered as going beyond the foundation of the bill.

In *Chalmers* v. *Chalmers*, 6 Har. & John. 29, it was held, the relief prayed for must be consistent with the bill; and a bill for one purpose cannot be made the ground of relief for another.

And again, in 2 Bibb, 4, it is held that a fact, not alleged, though proved, cannot form the basis of a decree, but must be disregarded.

The relief to be given, under a general prayer in a bill, must be agreeable to the case made by the bill, and not different from or inconsistent with it. *English* v. *Foxall*, 2 Peters, 595; *Franklin* v. *Osgood*, 14 John. Rep. 527; *Chalmers* v. *Chalmers*, 6 Har. & John. 29; 1 John. Ch. 117.

When the defendant prays particular relief, and for other relief, he can have no relief inconsistent with such particular relief, al-, though it should be founded on the bill. *Chalmers* v. *Chalmers*, 6 Har. & John. 29; 3 Eq. Dig. 39.

In *Simms* v. *Guthrie*, 9 Cranch, 24, Chief Justice Marshall says: "It is certainly a correct principle that the court cannot decree to any plaintiff, whatever he may prove, more than he claims by his bill."

And again, in *Knox* v. *Smith*, 4 How. 317, the Supreme. Court says: "No relief can be given, except a proper case be made in the bill. The inquiry is not only whether the defendant, from his own showing, or by proof, has acted inequitably; but also, whether the plaintiffs, by their allegations and proof, have shown that they are entitled to relief."

The same rule, that the relief must be consistent with the allegations of the bill, is held in the case cited in 1 Johnson Rep. 559, cited by counsel for appellant.

This court has decided the point in the same way. *Pierson* v. *Williams*, 23 Miss. 64; *Manly* v. *Kidd*, 28 Miss. 156.

In the case of *Manly* v. *Kidd*, the complainant set up title under a deed, but the bill also showed that they were the children of Robert Willis, who died in possession of the property, and it was insisted that the complainants could recover as distributees; but the court held it to be a cardinal rule, " that a party, at the hearing, cannot be permitted to show a title different from that set up in the bill, nor could proof be offered, or relief granted on facts not stated in the bill." See also 3 Rand. 263; 5 Munf. 314; Story Eq. Pl. § 885.

These authorities, I respectfully insist, settle the question that the relief must be founded on facts stated in the bill, or, at least, must be consistent with the facts there stated. But how is it in this case?

If the facts stated in the bill are to be taken, N. M. Taylor was only interested to the extent of one-fourth in the alleged partnership, or, at most, to the extent of a joint interest and liability of one-half with H. P. Taylor. It cannot be urged that H. P. Taylor was insolvent, or that the whole loss in this case must fall on the other two members, for the proof shows most conclusively that at

the time of the compromise, and at the time of filing the bill, 13th May, 1848, H. P. Taylor was solvent, and N. M. Taylor insolvent. Indeed, this very circumstance was the cause of the extraordinary attempt ·of complainant to make H. P. Taylor a member of the firm.

But if he had been insolvent, and the loss was to fall on the other two, it would not be *divided equally* between them, but in proportion to their interests in the *firm;* so that, in any event, N. M. Taylor could not be liable for *one-half* the loss to the other partner.

Suppose a judgment *pro confesso* had been taken upon the bill, could complainant have obtained a decree for one-half against N. M. Taylor? Unquestionably not. And if not, this is certainly a fair test of the question, whether the relief now granted is founded on and *consistent* with the bill. The most that could have been claimed in that case would be a joint decree against both Taylors, and an accounting of all the members of the firm as stated. Certainly equity will call one member of a firm, to account with another member for all the *losses,* but will require all parties to be brought in, in order that the right of all may be protected. The decree, therefore, against N. M. Taylor to account individually with Bass for the loss in this case, is clearly inconsistent with the allegations of the bill concerning the three members of the firm. The question is not whether N. M. Taylor was surprised by the facts as different from the allegations, but whether the allegations themselves are such as this decree can be based upon.

2. For the reason and on the authorities above set forth, I also insist that no decree at all can be had against N. M. Taylor. I have shown that the object of the bill and the facts stated were in reference to the settlement of the affairs of a firm which is found not to have existed. But a decree is now sought against N. M. Taylor, as a member of a wholly different firm. Certainly the liability of N. M. Taylor, as a member of the firm of Bass & N. M. Taylor, is inconsistent with his liability as a member of the firm of Bass and the two Taylors, for they are different in character and degree. In the one case there would be a settlement of the liabilities of all three, and a decree securing the rights of all three, and

this was demanded; and on the other a wholly different liability, not alleged in particular in the bill, is set up.

FISHER, J., delivered the opinion of the court.

The complainant filed his bill in the Superior Court of Chancery, alleging that he and the defendants, N. M. and H. P. Taylor, in the year 1834, entered into a copartnership in the business of planting, in the county of Madison. That about the year 1836, they purchased the sixteenth section of land of a certain township, in the name of complainant, Bass, and N. M. Taylor. That about the year 1839, the copartnership accounts were settled, when the defendant, N. M. Taylor, fell in debt to the complainant in about the sum of $1000. That the purchase-money for the sixteenth section not having been paid, the trustees recovered a judgment in the Circuit Court of Madison county against the complainant and N. M. Taylor, in February, 1846, for about the sum of $21,000. That an execution was issued upon this judgment, levied upon the sixteenth section, and that the same was sold, and purchased by the trustees. That the execution was also levied upon twenty-seven slaves as the property of the complainant. At this stage of the proceedings, the trustees of the township entered into an agreement with the complainant to settle the judgment, which was as follows: They were to receive back the sixteenth section of land, two hundred acres of other land, and five thousand dollars in money, for which sum the complainant executed his note. The trustees having purchased the land under the execution, already held the title in themselves, and the compromise, in other respects, appears to have been consummated as alleged in the bill.

The object of the bill was to compel the defendants to reimburse to the complainant one-half of the sum of $5000, to pay their portion of the attorneys' fee for defending the suit of the trustees, and to compel N. M. Taylor to pay the $1000 due on account of the settlement in 1839. The defendants both deny the copartnership as to H. P. Taylor, but admit it as to N. M. Taylor. It is conceded that the bill is not sustained as to H. P. Taylor, and the question is whether the complainant can recover against the other defendant, N. M. Taylor.

It is argued that the complainant having asserted a joint demand

against the defendants, and having failed to sustain it as such, cannot recover against either.    Whatever the general rule may be on this subject, it cannot apply to the present case.    According to the allegations of the bill, the two Taylors were partners to the extent of only one-half interest in the concern, and the complainant of the other half; and the party representing this interest, whether consisting of one or many, would be bound equally with the complainant to pay the partnership debts; and these debts having been paid by the complainant, the other partner claiming an equal interest, would be bound to reimburse to the complainant one-half of the money paid.    The defendant, in such case, could not say that he was taken by surprise, by the bill's asserting a claim against two, instead of one, for the reason that he himself discloses the fact, and aids in establishing it, that he was an equal partner with the complainant; and being equally interested in the property, he is liable to pay his portion of the charges against it.

We are, therefore, of opinion that this objection cannot be urged to defeat a recovery against N. M. Taylor.

It is next said that N. M. Taylor did not agree to the terms upon which the judgment was settled.    This may be true; but it is not seen how he can for this reason excuse himself for not paying his portion of a judgment which bound him without his consent.

It is very true, as a general rule, an obligation cannot be created without the consent of the party to be bound; and if what was done by the complainant could be considered as an obligation binding the defendant to the performance of some duty, it would certainly be regarded as void.    But such is not the light in which to consider the transaction; for the effect of it was not to create, but to discharge the party from an existing obligation; and while his consent is necessary to create an obligation, it is not necessary when it is to be discharged.    Here there was the balance of a judgment for more than $18,000 against the complainant and the defendant N. M. Taylor; and the question was not how an obligation to satisfy the judgment for a less sum could be created so as to bind them, but how it could be consummated so as to bind the plaintiffs in the judgment.    No question existed as to whether the debtors were bound for the whole amount, but the question was whether they could be discharged by the payment of a less sum.    The execution

had already been levied upon the complainant's property, and he was of course anxious that the judgment should be satisfied. The defendant, however, says that he could have made a better compromise than that made by the complainant. This allegation is not only not supported by proof, but is shown by the defendant's own letter to be untrue. But admitting it to be true, it could only avail the defendant by his showing that the complainant either paid more than the amount of the judgment, or that he was informed of, or knew of the more advantageous terms upon which the judgment could be settled, before going into the compromise.

We are, therefore, of opinion that the complainant is entitled to an account and decree in regard to the $5000, and the attorney's fee paid; but not for the $1000, due on account of the settlement in 1839.

The account will embrace the $5000,—the difference in value of the land owned by the defendant,—and also the land of the complainant, and a decree will be entered for the balance.

Decree affirmed as to H. P. Taylor, and reversed as to N. M. Taylor, and cause remanded.

HANDY, J., having heretofore been of counsel in this case, took no part in the consideration of it here.

A reargument was asked for, but refused.